UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENVILLE

AMERICAN WATER HEATER
COMPANY,                                    )
                                            )
            Plaintiff,                      )
                                            )    No. 2:16-CV-125
v.                                          )
                                            )    Judge Curtis L. Collier
TAYLOR-WINFIELD                             )
TECHNOLOGIES, INC.,                         )
                                            )
            Defendant.                      )

**M E M O R A N D U M**

Before the Court is Defendant Taylor-Winfield Technology's ("Seller") motion to

dismiss Plaintiff American Water Heater's ("Buyer") breach-of-contract and breach-of-warranty

claims for lack of personal jurisdiction or, in the alternative, to transfer for improper venue.

(Doc. 8.)  Buyer filed a response (Doc. 13), and Seller filed a reply (Doc. 15).  For the following

reasons, the Court will **DENY** Seller's motion.

## I.    BACKGROUND

Buyer is a Nevada corporation headquartered in Johnson City, Tennessee.  (Doc. 6.)  In

2013, Buyer invited vendors to bid for the design and manufacture of two long seam welding

machines (the "Welders").  (Doc. 14.)  The Welders were to be custom-designed according to

Buyer's specifications for use in Buyer's manufacturing plant in Johnson City, Tennessee.

Buyer first inquired about Seller's interest in manufacturing the Welders in late May

2013.   Seller is an Ohio corporation with its principal place of business in Youngstown, Ohio.

(Doc. 8-1.)  A lengthy period of negotiations followed.

On June 11, 2013, Seller responded to Buyer's inquiry with a presentation regarding its ability to manufacture the Welders. After a visit to Buyer's Johnson City facility, Seller sent Buyer its first proposal and concept drawing for one of the Welders on June 14, 2013. (Doc. 14.) The proposal quoted a price of $2,998,489.00 for one of the Welders and noted delivery would be made to Buyer's Johnson City facility at an additional cost of $8,787.00.

On June 21, 2013, Seller submitted a revised proposal ("Revision A") to Buyer. (*Id*.) It quoted a price for the second Welder at $2,748,249.00. It further noted delivery would be made to Buyer's Johnson City facility at the same additional cost as the first Welder.

Over the next few months, Buyer and Seller remained in frequent contact. On October 28 and 29, 2013, Seller representatives visited Buyer's Johnson City facility to view the area in which the Welders would be installed. Following this visit, Seller submitted another revised proposal ("Revision B"). (*Id*.) The proposal increased the price for the Welders to $3,261,906.00 and $3,011,089.00, respectively.

On December 17, 2013, Seller submitted additional revised proposals ("Revisions C and D") to Buyer. Each noted Seller would provide a service engineer at Buyer's Johnson City facility during the Welders' installation who would participate in the system de-bug, start-up, and run-off. Two days later, Seller submitted yet another revised proposal ("Revision E"). This revision again provided for Seller personnel to participate in installation and start-up, and it estimated shipment at twelve months for the first system and fourteen months for the second system. On December 20, 2013, Buyer emailed to Seller a "letter of intent" instructing Seller to proceed with the project.

On January 27, 2014, Buyer issued separate purchase orders for each of the Welders (the "Purchase Orders"). (Docs. 6-1, 6-2.) The purchase orders bore the logo of Buyer's parent

company, "A.O. Smith"—a Delaware corporation based in Milwaukee, Wisconsin. Under the logo, the purchase orders directed invoices to Buyer's headquarters in Johnson City. (*Id*.) Seller issued its invoices to the Johnson City address.

Over the course of negotiations, the parties never signed a document purporting to be the final written contract. Numerous proposed terms were exchanged, however. Significantly, on December 17, 2013, Buyer emailed its draft of the terms and conditions (the "Initial Terms") to Seller, which contained both a choice of law provision and a forum selection clause. (Doc. 15-1.) This provision mandated application of Wisconsin law and submission to exclusive jurisdiction in Milwaukee County, Wisconsin.[1] That same day, Seller returned a revised version of the Initial Terms (the "Counteroffer") but left the choice of law and forum selection clauses intact. (*Id*.) Buyer offers testimony that 1) neither Buyer nor Seller signed either the Initial Terms or the Counteroffer; 2) Seller never otherwise communicated acceptance of the Initial Terms; and 3) the parties negotiated the Counteroffer no further before Buyer later submitted its Purchase Orders on January 27, 2014. (Doc. 14.) Buyer further avers the Purchase Orders bore "general terms and conditions" on the back of the documents that retained the Wisconsin choice of law provision but made no mention of the forum selection clause.[2] (Doc. 13.) Nonetheless, Buyer emailed to Seller its "letter of intent" on December 20, 2013 instructing Seller to proceed without having memorialized the terms of the agreement. (Doc. 8-1.)

Construction of the Welders did not go as planned. The Welders could not consistently meet the quality requirements in Buyer's specifications. From January 2015 to April 2016, the

---

[1]     Presumably, Wisconsin was chosen as a forum because Buyer's parent company is headquartered there.

[2]     Although Buyer has submitted these "general terms and conditions" to the Court on what appears to be the back of one of its Purchase Orders, Seller denies those terms and conditions were on the back of the Purchase Orders it received.

parties remained in close contact in an attempt to resolve the performance issues. Seller twice visited Buyer's sister company in Ashland City, Tennessee to inspect welders in operation there. (Doc. 14.) The parties made more than thirty conference calls during this time period, and Buyer representatives made twenty additional visits to Seller's Youngstown facility. *Id*. Despite these efforts, the Welders' performance issues could not be resolved, and the Welders were never delivered.

On May 12, 2016, Buyer sued Seller for breach of contract and breach of warranty for failure to construct and deliver Welders meeting Buyer's specifications. (Doc. 1.) Seller moves to dismiss the action for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) and for improper venue under Rule 12(b)(3) and 28 U.S.C. § 1391(b). (Doc. 8.) In the alternative, Seller asks the Court to transfer the case to the United States District Court in either the Northern District of Ohio or the Eastern District of Wisconsin pursuant to 28 U.S.C. § 1404 and § 1406(a). *Id*.

## II.  STANDARD OF REVIEW

The procedure through which district courts are to dispose of Rule 12(b)(2) motions to dismiss is well settled. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). The plaintiff bears the burden of establishing personal jurisdiction. *Id*. To do so, the plaintiff may not rely solely on the pleadings. *Id*. Rather, it must, by affidavit or otherwise, set forth specific facts demonstrating the court's jurisdiction. *Id*. Where, as here, the court considers a motion to dismiss under Rule 12(b)(2) without the aid of an evidentiary hearing, the plaintiff need only make a *prima facie* case the court has personal jurisdiction. *Conn v. Zakharov*, 667 F.3d 705, 711 (6th Cir. 2012). In ruling, the court construes the pleadings and affidavits in the light most favorable to the plaintiff and may also consider the defendant's undisputed factual assertions. *Id*.

4

The court does not, however, weigh the controverting assertions of the party seeking dismissal, so as "to prevent non-resident defendants from regularly avoiding personal jurisdiction simply by filing an affidavit denying all jurisdictional facts." *Theunissen*, 935 F.2d at 1459.

On a Rule 12(b)(3) motion to dismiss for improper venue, "the plaintiff bears the burden of proving that venue is proper." *Gone To The Beach, LLC v. Choicepoint Services, Inc.*, 434 F. Supp. 2d 534, 536-37 (W.D. Tenn. 2006). "The Court may examine facts outside the complaint but must draw all reasonable inferences and resolve factual conflicts in favor of the plaintiff." *Id*. at 537.

Finally, the district court has broad discretion in considering a motion to transfer under 28 U.S.C. § 1404(a). *KANL, LLC v. Savage Sports Corp.*, No. 3:13–CV–265–TAV–CCS, 2014 WL 1745443, at *2 (E.D. Tenn. Apr. 30, 2014). Under such a motion, "[t]he defendant bears the burden of proving that there is an alternative venue that is proper and that the convenience of the parties and witnesses, and the interest of justice, warrant transfer." *Id*. "These burdens are significant. Courts should not disturb a plaintiff's choice of forum unless the defendant makes substantial showings of convenience and justice." *Id*.

III.    **DISCUSSION**

   A.    **Personal Jurisdiction**

As the plaintiff, Buyer bears the burden of proof on personal jurisdiction. In a diversity action, "the law of the forum state dictates whether personal jurisdiction exists, subject to constitutional limitations." *Intera Corp. v. Henderson*, 428 F.3d 605, 615 (6th Cir. 2005). More specifically, personal jurisdiction over a non-resident defendant exists only where both the forum state's long-arm statute and federal due process requirements are satisfied. *Id*. Tennessee's long-arm statute "has been interpreted to be 'coterminous with the limits on

personal jurisdiction imposed' by the Due Process Clause of the United States Constitution, and

thus, 'the jurisdictional limits of Tennessee law and of federal constitutional law of due process

are identical.'" *Id.* at 616 (quoting *Payne v. Motorists' Mut. Ins. Cos.*, 4 F.3d 452, 455 (6th Cir.

1993)). Where a state's long-arm statute reaches as far as the limits of Due Process, as is the case

here, the two inquiries merge. *Intera Corp.*, 428 F.3d at 616. Accordingly, the Court "need only

determine whether the assertion of personal jurisdiction . . . violates constitutional due process."

*Aristech Chem. Int'l v. Acrylic Fabricators*, 138 F.3d 624, 627 (6th Cir. 1998).

Under federal due process analysis, an out-of-state defendant is subject to specific

personal jurisdiction only where it maintains "certain minimum contacts with [the forum state]

such that the maintenance of the suit does not offend 'traditional notions of fair play and

substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). In assessing this

standard, the Sixth Circuit applies a three-factor test: (1) The defendant must purposefully avail

himself of the privilege of acting in the forum state or causing a consequence in the forum state;

(2) the cause of action must arise from the defendant's activities there; and (3) the acts of the

defendant or consequences caused by the defendant must have a substantial enough connection

with the forum state to make the exercise of jurisdiction over the defendant reasonable. *S. Mach.*

*Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968).

The "purposeful availment" requirement–often referred to as the *sine qua non* of personal

jurisdiction–"ensures that a defendant will not be haled into a jurisdiction solely as a result of

random, fortuitous, or attenuated contacts or of the unilateral activity of another party or third

person." *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 551 (6th Cir. 2007)

(citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). Specific personal

jurisdiction is proper only where the defendant himself has created a substantial connection with

the forum state.  *Burger King*, 471 U.S. at 476.  This connection however, does not require

physical entry. So long as efforts are "purposefully directed" toward residents of another state, an

"absence of physical contacts can[not] defeat personal jurisdiction there."  *Id.*

On the second prong, a court must determine whether a plaintiff's cause of action arises

from the defendant's contacts with the forum state.  In making this determination, a court

assesses "whether the causes of action were 'made possible by' or 'lie in the wake of'

defendant's contacts, or whether the causes of action are 'related to' or 'connected with' the

defendant's contacts with the forum state."  *Air Prods.*, 503 F.3d at 553 (internal citations

omitted).

Finally, if the court finds the first two prongs satisfied, it must decide whether the

exercise of jurisdiction over the defendant is reasonable.  *Mohasco*, 401 F.2d at 381.  In

considering whether the exercise of personal jurisdiction is reasonable, courts look to four

factors: "(1) the burden on the defendant; (2) the interest of the forum state; (3) the plaintiff's

interest in obtaining relief; and (4) other states' interest in securing the most efficient resolution

of the controversy."  *Intera Corp.*, 428 F.3d at 61.

### 1. Purposeful Availment

Buyer has established the first prong of the *Mohasco* test.  Seller entered into extensive

negotiations with a company headquartered in Johnson City, Tennessee.  Seller designed and

manufactured Welders, intending them to be delivered to Tennessee and installed in Buyer's

Johnson City facility.  Over the course of negotiations prior to construction of the Welders,

Seller visited Buyer's Johnson City facility to view the area in which the Welders would be

installed.  During this period, Seller submitted to Buyer its initial proposal and five subsequent

revisions (Revisions A through E), three of which provided for Seller service engineers to be

present during the Welders' installation and start-up at Buyer's Johnson City facility. Seller received purchase orders from Buyer in Tennessee and issued its invoices to Buyer's Tennessee address. Once construction went awry, the parties engaged in more than thirty conference calls, and Seller visited Buyer's sister company in Ashland City, Tennessee to inspect functional welders there. This three-year period of contact and communication is a far cry from the "random, fortuitous, or attenuated contacts" the purposeful availment prong is designed to root out. Seller "purposefully directed" its commercial efforts toward Tennessee and established a "substantial connection" with the state that made it amenable to suit there.

Seller argues, however, that the proposed forum selection clause exchanged during negotiations "utterly eliminated" any reasonable expectation of Seller being haled into a Tennessee court. This argument presumes the clause was an undisputed term of the agreement, and the affidavits suggest otherwise. Both parties agree they exchanged numerous documents proposing the final terms of the contract.[3] Buyer's Initial Terms included the forum selection clause agreeing to exclusive jurisdiction in Wisconsin. Seller returned the revised Counteroffer but left the forum selection clause in the document. Neither party signed either the Initial Terms or the Counteroffer. Neither party otherwise indicated acceptance of the other's proposed terms. And no further negotiations were had before Buyer submitted its Purchase Orders to Seller. In fact, Buyer avers it never considered the forum selection clause part of the contract, and its Purchase Orders submitted to Seller made no mention of the clause. A proposed forum selection

---

[3]     Seller avers the parties exchanged "numerous documents setting out each of their respective proposals for final contract terms" (Doc 8-1), but what is meant by "numerous" is unclear. The parties confine their discussions specifically to the Initial Terms, the Counteroffer, and the Purchase Orders, as defined above. But it is unclear whether there was additional correspondence throughout negotiations that informed each side's understanding of the agreement struck.

clause to which neither party expressly agreed does not invalidate Seller's extensive connection with Tennessee as outlined above for purposes of purposeful availment.

### 2.      Arises from Defendant's Contacts

On the second prong, Buyer must demonstrate the cause of action "arises from" the defendant's actions in the forum state. *Mohasco*, 401 F.2d at 381. Although the Sixth Circuit has formulated the test for this prong in different ways, *see Air Prods.*, 503 F.3d at 553, courts should consider whether a plaintiff's cause of action arises from "Defendants' contacts with the forum state as well as actions directed at the forum state." *Id.* Here, as described above, Seller submitted designs and pricing quotes to Buyer in Tennessee, undertook construction of welding machines to be delivered to and used in Tennessee, visited Buyer and Buyer's sister company for testing in Tennessee, allegedly failed to meet Buyer's performance requirements in constructing the Welders, and failed to deliver the Welders to their Tennessee destination. These contacts with Tennessee are precisely what gave rise to Buyer's breach-of-contract and breach-of-warranty claims. As such, Buyer has met the second prong of the *Mohasco* test.

### 3.      Reasonableness

Having found the first two prongs satisfied, the Court must determine whether exercising jurisdiction over Seller is reasonable. As noted above, the Court considers four factors in making the reasonableness determination: "(1) the burden on the defendant; (2) the interest of the forum state; (3) the plaintiff's interest in obtaining relief; and (4) other states' interest in securing the most efficient resolution of the controversy." *Intera Corp.*, 428 F.3d at 618.

The burden on Seller is not insignificant. Seller is an Ohio company, headquartered in Ohio, and would have to travel to Tennessee to litigate. The weight of this burden, though, appears much lighter when considering Seller's repeated trips to Tennessee pre- and post-

construction of the Welders. Moreover, interstate travel, alone, does not make the exercise of jurisdiction in another state unreasonable. *Youn v. Track, Inc.,* 324 F.3d 409, 420 (6th Cir. 2003). Second, Tennessee has a strong interest in maintaining jurisdiction, as one of its resident companies was allegedly harmed at the hands of an out-of-state defendant. Although the actual construction of the Welders took place in Ohio, the effects of the failure to deliver functional Welders were borne by a Tennessee company within Tennessee. Third, Buyer has a strong interest in seeking relief in this Court as a resident of Tennessee with its principal place of business within the state.

Finally, the only other states with a potential interest in adjudication are Wisconsin and Ohio. Wisconsin's interest stems solely from the forum selection clause in the proposed Counteroffer giving Wisconsin jurisdiction. Even assuming this clause was a valid term of the agreement, a forum selection clause, standing alone, is insufficient to confer jurisdiction on the designated state. *Intera Corp.*, 428 F.3d at 618. The stronger claim to hear the dispute is Ohio's. Not only is the defendant an Ohio company, but the failed construction occurred in Ohio, and the Court presumes that is where the Welders currently sit. As noted above, however, the harm resulting from the failure to deliver functional Welders to their Tennessee destination was felt exclusively in Tennessee. Accordingly, the Court finds it reasonable to exercise jurisdiction over Seller.

**B.    Venue**

Seller further moves the Court to dismiss the action for improper venue pursuant to 28 U.S.C. § 1391(b). Under this section, venue is proper in a judicial district where the defendant resides. Section 1391(c)(2) deems a defendant to reside "in any judicial district in which such

defendant is subject to the court's personal jurisdiction." Because the Court, as outlined above, finds it may exercise personal jurisdiction over Seller, venue in this district is likewise proper.

### C. Transfer

In the alternative, Seller moves the Court to transfer the case for improper venue pursuant to 28 U.S.C. § 1406(a) and § 1404 to the United States District Court for the Eastern District of Wisconsin.[4] Seller bases its argument on the Wisconsin forum selection clause in its Counteroffer. Because the proper mechanism for enforcing a forum selection clause is § 1404(a), *Atl. Marine Constr. Co., Inc. v. U.S. Dist. Court for the W. Dist. of Tex.*, 134 S. Ct. 568, 579 (2013), the Court will address Seller's argument under that provision.[5] As the defendant, Seller bears the burden of proof on this issue.

In *Atlantic Marine*, the United States Supreme Court held that § 1404(a) "provides a mechanism for enforcement of forum-selection clauses that point to a particular federal district" and that "the appropriate way to enforce a forum-selection clause pointing to a state *or foreign forum* is through the doctrine of *forum non conveniens*." *Id.* at 579–80 (first emphasis added). The Supreme Court explained that "Section 1404(a) is merely a codification of the doctrine of *forum non conveniens* for the subset of cases in which the transferee forum is within the federal court system; in such cases, Congress has replaced the traditional remedy of outright dismissal

---

[4]    The Court notes, and Seller concedes, that Seller did not move the Court to transfer the case under § 1404 in its initial response to Buyer's complaint. It invoked § 1404 for the first time in its reply to Buyer's response to Seller's motion to dismiss. Even so, Seller's motion is properly before the Court. A motion to transfer under § 1404(a) is "not the same as" Rule 12(b) motions and "is therefore not subject to the waiver provisions of Rule 12(h)." *Blane v. Am. Inventors Corp.*, 934 F. Supp. 903, 906 (M.D. Tenn. 1996).

[5]    "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a).

with transfer." *Id.* at 580 (citing *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007)).

Substantively, *Atlantic Marine* provides that "[o]nly under extraordinary circumstances unrelated to the convenience of the parties" should a court decline to enforce a forum selection clause. *Id.* at 581. When considering motions under § 1404(a), "[o]rdinarily the district court would weigh the relevant factors and decide whether, on balance, a transfer would serve 'the convenience of parties and witnesses' and otherwise promote 'the interest of justice.'" *Id.* "The calculus changes, however, when the parties' contract contains a valid forum-selection clause, which represents the parties' agreement as to the most proper forum." *Id.* (internal quotation marks omitted). In such a circumstance, the "*valid* forum-selection clause [should be] given controlling weight in all but the most exceptional cases." *Id.* (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988)) (emphasis added).

Seller argues that the proposed forum selection clause in the Counteroffer giving exclusive jurisdiction to Wisconsin controls here, as this is not one of the "exceptional cases" exempted by the Supreme Court. Seller's argument, however, presumes the existence of a valid forum selection clause. To trigger *Atlantic Marine* analysis, Seller must first meet its "significant burden" of establishing Wisconsin as the proper forum—that is, by showing the forum selection clause was part of the contract. This, Seller has failed to do.

Because the underlying transaction at issue involves the sale of goods, whether the forum selection clause became part of the contract is governed by the applicable state's codification of the Uniform Commercial Code ("UCC").[6] Seller cites the forum selection clause in the Initial

---

[6]    In its cursory discussion on this point, Seller cites Wisconsin law (see below). The Court notes that the applicable UCC provision (§ 2-207), and both Wisconsin's and Tennessee's adoption of it, share identical language. *See* Wis. Stat. § 402.207, T.C.A. § 47–2–207. As such,

12

Terms and the Counteroffer, while Buyer notes the absence of the clause in the subsequently-submitted Purchase Orders. This exchange of documents appears to be a "battle of the forms," addressed specifically by UCC § 2-207. However, the only law Seller cites as to contract formation under this provision is part of the Wisconsin analogue to UCC § 2-207, discussing the role the parties' conduct plays when the writings of the parties do not establish a contract.[7] Seller does not cite the remaining subsections of the "battle of the forms" provision,[8] nor does it explain why the subsection it does cite controls over those omitted. Furthermore, Seller cites no case law addressing when precisely the contract was formed, the effect the Purchase Orders and invoices may have had on the previous exchange of the Initial Terms and the Counteroffer, or the effect of the parties' conduct after the Initial Terms and the Counteroffer were exchanged.

---

the Court need not distinguish between them for current purposes, and the Court makes no finding as to which state's law applies.

[7]     "Conduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale although the writings of the parties do not otherwise establish a contract. In such case the terms of the particular contract consist of those terms on which the writings of the parties agree . . . ." Wis. Stat. § 402.207(3).

[8]     The omitted subsections provide:

   (1) A definite and seasonable expression of acceptance or a written confirmation
   which is sent within a reasonable time operates as an acceptance even though it
   states terms additional to or different from those offered or agreed upon, unless
   acceptance is expressly made conditional on assent to the additional or different
   terms.
   (2) The additional terms are to be construed as proposals for addition to the
   contract. Between merchants such terms become part of the contract unless:
   (a) The offer expressly limits acceptance to the terms of the offer;
   (b) They materially alter it; or
   (c) Notification of objection to them has already been given or is given within a
   reasonable time after notice of them is received.

Wis. Stat. § 402.207(1)-(2).

Accordingly, the Court finds Seller has failed to meet its burden in establishing Wisconsin as the proper forum and denies Seller's motion to transfer under § 1404(a).

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, the Court concludes it has personal jurisdiction over Defendant and that venue is proper. The Court will **DENY** Defendant's motion. (Doc. 8.)

**An order shall enter.**

/s/
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**