UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at GREENEVILLE

| | |
|---|---|
| AMERICAN WATER HEATER CO., <br> and A.O. SMITH CORP., <br><br> *Plaintiffs,* <br><br> v. <br><br> THE TAYLOR WINFIELD CORP., <br> d/b/a TAYLOR-WINFIELD <br> TECHNOLOGIES, <br><br> *Defendant.* | No. 2:16-CV-125 <br><br> Judge Collier <br> Magistrate Judge Corker |

# **MEMORANDUM**

Before the Court is a motion for partial summary judgment by Defendant, The Taylor Winfield Corporation ("Taylor-Winfield"). (Doc. 91.) Because of a subsequently filed stipulation of dismissal (Doc. 97), the parties agree that the motion is no longer for partial judgment, but addresses all of the remaining claims in this action. (*See* Docs. 98 at 1 n.1; 100 at 2 n.2.) Plaintiffs, A.O. Smith Corporation ("A.O. Smith") and American Water Heater Company ("AWH"), have responded in opposition (Doc. 98), and Defendant has replied (Doc. 100).

For the reasons stated below, the Court will **GRANT IN PART** and **DENY IN PART** Defendant's motion for summary judgment (Doc. 91). The Court will **DENY** the motion as to Plaintiffs' breach of contract claims. The Court will **GRANT** the motion as to Plaintiffs' breach of warranty claims.

## I. BACKGROUND

This diversity action concerns an order for two long-seam welding machines capable of welding rolled sheets of steel into cylinders, or "shells," which can later be capped at both ends in

order to form water heater tanks. (Doc. 6 ¶ 7.) Plaintiffs, A.O. Smith and AWH, were the intended purchasers of the long seam welding machines (the "machines"). A.O. Smith is the parent corporation of AWH, which operates a water heater manufacturing facility in Johnson City, Tennessee. (Doc. 98 at 5.)

On January 27, 2014, A.O. Smith issued two written purchase orders for the machines to Defendant Taylor-Winfield, an Ohio corporation offering welding products. (*Id.*; Doc. 92-1.) The purchase orders incorporated a written proposal by Taylor-Winfield for the design and build of the machines. (*See* Doc. 92-1.) Taylor-Winfield's proposal, in turn, incorporated A.O. Smith's initial written specifications for its planned use of the machines. (*See* Doc. 92-3 at 1.) The documents specified that Taylor-Winfield would design the machines so that they would automatically load, roll, size, TWINLAP seam weld, trim, and unload steel sheets. (*See* Doc. 92-3 at 1.) The TWINLAP technology would use two sets of wheels during a single pass of the equipment to weld the steel. (Doc. 98 at 2 n.4.) Plaintiffs contracted to pay $2,204,124.00 for the first long seam welding machine (the "first machine"), and $1,928,206.00 for the second long seam welding machine (the "second machine"). (Doc. 92-1.) Taylor-Winfield's proposal estimated a delivery date of twelve months for the first machine and fourteen months for the second machine. (Doc. 92-3 at 26.)

The documents also required Taylor-Winfield to conduct a trial run, or "factory run-off," of the welding machines at Taylor-Winfield's factory in Ohio once the machines were completely operational. (Docs. 98 at 6; 92-3 at 2, 92-4 at 5 ¶ 10.1.) Taylor-Winfield was to notify the A.O. Smith project manager "of the date of the scheduled Trial Run at the supplier's site at least two (2) weeks prior to the scheduled test." (Doc. 92-4 at 5 ¶ 10.1.) The documents required A.O. Smith

to issue an "Acceptance to Ship" after a successful "factory run-off" test before Taylor-Winfield would be authorized to ship the machines from Ohio to Tennessee. (Doc. 98 at 6.)

Upon issuance of the purchase orders, Taylor-Winfield commenced work on the machines, and A.O. Smith commenced payment of installments under the contract. (*Id.*) There were numerous discussions between Taylor-Winfield and A.O. Smith related to the scheduling of run-off testing in 2015. (Docs. 18 at 3-4; 98 at 7; 98-2 at 4, 7-9.) However, the machines could not consistently meet the requirements in A.O. Smith's specification. (Docs. 18 at 3-4; 98 at 7.) By spring of 2015, Taylor-Winfield abandoned the TWINLAP design, instead moving to a design which utilized a single set of wheels and induction heating. (Doc. 98 at 7.) A.O. Smith allowed Taylor-Winfield time to implement and test the replacement design. (Doc. 98 at 3.) The parties planned that run-off testing could occur in late 2015, but a significant failure in a water heater shell occurred in November 2015, which prevented the run-off from being scheduled. (Docs. 98 at 7.)

On February 2, 2016, senior leadership from both sides met at Taylor-Winfield to discuss the status of the machines and the plan for performance of the contract going forward. (*Id.*) The meeting included A.O. Smith's Plant Manager, Carol Peters, and Taylor-Winfield President, Alex Benyo. (*Id.*) The result of the meeting was a handwritten note signed by Benyo and other Taylor-Winfield personnel. (Doc. 6-5.) The note stated,

> Agreement to ship Machine 1 to A.O. Smith on 03/14/16
> - Runoff based on 14", 16", and 18" Diameter shells listed in runoff sheet provided by A.O. Smith
> - 20" & 24" Diameter shells will have mechanical alignment completed on Machine 1
> - A.O. Smith will provide resources to help
> - Weekly calls will be setup with Taylor Winfield and A.O. Smith senior management
> - Ship Machine 2 to A.O. Smith on 06/01/16
> - Weld schedule development will be done @ Taylor Winfield on Machine 2
> 
> [signatures]

(*Id.*)  In regard to A.O. Smith's agreement to provide resources to help Taylor-Winfield, A.O. Smith hired a third-party welding engineer, "Dr. Anthony," to work with A.O. Smith's team to examine Taylor-Winfield's design and make recommendations.  (Docs. 98 at 4; 98-5 at 6-7.)

The handwritten agreement was not followed.  (Doc. 93 at 3.)  Shortly after the meeting, Dr. Anthony began suggesting changes to the underlying design and structure of the machines which were already substantially completed at that point in time.  (*Id.*)  Taylor-Winfield was then informed by "another A.O. Smith official that Dr. Anthony's suggestions were mandatory."  (*Id.*)  Taylor-Winfield agreed to make some, but not all of the changes which Dr. Anthony had suggested.  (*Id.*)  According to Taylor-Winfield personnel, the new work required Defendant to "stop the finishing touch work" which was "proposed at the February 2, 2016 meeting," and caused them to not "meet the factory 'run-off' schedule set at February 2, 2016 meeting for February 23 and/or 24."  (Doc. 93 at 3.)  On March 3, 2016, a telephone call took place between Benyo and Peters.  (Doc. 98 at 9.)  Peters instructed Benyo to move forward with development and testing of the machines as Taylor-Winfield saw fit, and she informed A.O. Smith's internal team that they should support Taylor-Winfield's plans.  (Doc. 98 at 9.)

On April 6, 2016, A.O. Smith's technical project team met with Taylor-Winfield to determine if the first machine was ready for a run-off.  (Doc. 99 at 3.)  Jim Klug, the project manager for A.O. Smith, presented Benyo with a document entitled "Mash Seam Welder Team Machine Analysis," which contained some parameters for a preliminary factory run-off.  (*Id.*)  Neither the document itself, nor the A.O. Smith team, suggested or requested a timeframe for ultimately performing the run-off.  (*Id.*)

No run-off plan was ever agreed upon by A.O. Smith and Taylor-Winfield.  (Doc. 98 at 11.)  At no time after changing from the TWINLAP system to the induction heating system did

4

Taylor-Winfield inform A.O. Smith that it was prepared for run-off testing at its facility. (Doc. 98 at 13.)

On May 13, 2016, A.O. Smith advised Taylor-Winfield that it was cancelling the contract. (*Id.*) A.O. Smith issued a "notice of breach" letter to Taylor-Winfield, as well as a copy of the original complaint filed in this case on May 12, 2016. (*See* Doc. 1.) The letter noted that Plaintiffs had "no reason to believe that Taylor Winfield [was] close to completing a machine" that would meet their requirements, in fact they came "to the opposite conclusion" about the status of the contract. (Doc. 94-3.) The letter offered a ten-day option to cure by supplying the machines Plaintiffs had ordered. (*See id.*) When the ten-day cure period expired without delivery of the machines, Plaintiffs formally served process of the complaint on Taylor-Winfield. (Doc. 98 at 12.)

The complaint, as amended, asserts three counts of breach of contract, two counts of breach of the implied warranty of fitness for a particular purpose, and two counts of breach of express warranty. (Doc. 6 at 7-10.)

Defendant Taylor-Winfield now moves for summary judgment in its favor. (Doc. 91.) In support of the motion, Defendant states that Plaintiffs waived a definite time for performing the sales contract, and, thus, it had a "reasonable time" to perform its duty of delivering the machines. (Doc. 95 at 7.) Defendant argues that the "reasonable time" requirement is not breached until a party communicates to the other some suggestion, request, or demand for a definite time limit on performance, which Defendant states did not occur in this case. (*Id.* at 8.) Last, Defendant argues that Plaintiffs' claims for breach of warranty must fail, as there was no tender of delivery of the machines. (*Id.* at 11.) In response, Plaintiffs state that there are disputed factual issues regarding waiver of the time for performance. (Doc. 98 at 14-19.) And even if a

5

waiver of the time for performance did occur, Plaintiffs argue that whether Defendant breached a "reasonable time" for performance presents a question of fact for a jury to decide. (*Id.* at 19-21.) Plaintiffs also believe their breach of warranty claims should survive because Defendant cites a section of the UCC which only relates to statute of limitations, and not the issue presented here. (*Id.* at 22.)

After addressing a dispute concerning choice of law, the Court concludes (1) there is a genuine issue of material fact regarding waiver of the time for delivery of the machines, and (2) that Plaintiffs cannot maintain claims for breach of warranty as a matter of law, as no tender of delivery of the machines occurred.

## II.    STANDARD OF REVIEW

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003). The Court should view the evidence, including all reasonable inferences, in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

To survive a motion for summary judgment, "the non-moving party must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial." *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002). Indeed, a "[plaintiff] is not entitled to a trial on the basis of mere allegations." *Smith v. City of Chattanooga*, No. 1:08-cv-63, 2009 WL 3762961, at *2-3 (E.D. Tenn. Nov. 4, 2009) (explaining the court must determine

whether "the record contains sufficient facts and admissible evidence from which a rational jury could reasonably find in favor of [the] plaintiff"). In addition, should the non-moving party fail to provide evidence to support an essential element of its case, the movant can meet its burden of demonstrating no genuine issue of material fact exists by pointing out such failure to the court. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

At summary judgment, the Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). If the Court concludes a fair-minded jury could not return a verdict in favor of the non-movant based on the record, the Court should grant summary judgment. *Id.* at 251-52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

## III. ANALYSIS

### A. Choice of Law

In diversity actions, state substantive law governs. *See Erie R.R. Co. v. Tomkins*, 304 U.S. 64, 73 (1938). Plaintiffs contend in their amended complaint that Wisconsin law applies to this dispute due to a choice-of-law clause contained in the parties' contract. (Doc. 6 at 5.) Plaintiffs claim the choice-of-law clause was contained in a "term sheet" which appeared on the reverse side of each of the purchase orders it issued to Defendant. (Doc. 95 at 6.) Defendant argues that the referenced choice-of-law clause never made it into the parties' final contract, as the purchase orders were emailed to Defendant, and did not contain a term sheet or any reverse sides of those documents. (*See id.* at 7.) Defendant states that, absent any choice-of-law clause, Tennessee law governs. (*Id.* at 6-7.) In response, Plaintiffs state that they disagree that Tennessee law applies, but also continue by commenting, "there is little difference in Tennessee and Wisconsin case law related to the various provisions of the Uniform Commercial Code relied upon by Taylor-

7

Winfield." (Doc. 98 at 14.) Thus, for purposes of the motion for summary judgment only, Plaintiffs cite Tennessee law. (*See* Doc. 98.)

The Court need only conduct a choice-of-law analysis if a conflict exists between two states' laws. *Pogue v. Principal Life Ins. Co.*, No. 3:14-CV-00599-GNS, 2015 WL 5680464, at *4 (W.D. Ky. Sept. 25, 2015) (citing *Williams v. Toys "R" Us*, 138 F. App'x 798, 803 (6th Cir. 2005)); *see also CenTra, Inc. v. Estrin*, 538 F.3d 402, 409 (6th Cir. 2008) (foregoing a choice of law analysis because the possible sources of law governing the issue at hand were consistent with one another "making any asserted conflict of laws a false conflict"). Plaintiffs, who advocate for application of Wisconsin law, have stated that there is little difference between Tennessee and Wisconsin case law regarding various provisions of the Uniform Commercial Code ("UCC"). Thus, both parties have applied Tennessee law. Because Plaintiffs have conceded that there is no true "conflict" between the states' laws, the Court will similarly apply Tennessee law without resolving the factual dispute regarding the choice-of-law clause. In addition, the Court agrees with Defendant's conclusion that, absent the dispute over the choice-of-law clause, application of Tennessee law would be appropriate as compared to the application of law from any other state.[1]

**B.     Waiver of Time for Performance**

Plaintiffs' "Notice of Breach" letter stated that Taylor-Winfield had failed to deliver the machines "on time." (Doc. 99 at 9.) Defendant argues this was an erroneous conclusion by Plaintiffs because Plaintiffs waived any definite time for performance. (Doc. 95 at 7.)

---

[1] "To determine the applicable substantive law in a diversity-jurisdiction case, federal courts apply the choice-of-law rules of the forum state: here, Tennessee." *JNJ Logistics, LLC v. Scottsdale Ins. Co.*, 617 F. App'x 464, 467-68 (6th Cir. 2015); *see also Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Tennessee's choice-of-law rules provide that claims based on a contract are presumed to be governed by the law of the jurisdiction in which the contract was executed, absent contrary indications. *Id.*

8

"Waiver has long been defined under Tennessee law as the 'voluntary relinquishment of a known right.'" *Freeman Mgmt. Corp. v. Shurgard Storage Ctrs., Inc.*, No. 3:06CV0736, 2007 WL 1556604, at *10 (M.D. Tenn. May 24, 2007) (quoting *Dallas Glass of Hendersonville, Inc. v. Bituminous Fire & Marine Ins. Co.*, 544 S.W.2d 351, 354 (Tenn. 1976)). Waiver is never presumed, and the party claiming a waiver has the burden of proving it by a preponderance of the evidence. *Id.*

Waiver may be proved by: (1) express declaration; (2) acts and declarations manifesting an intent and purpose not to claim a supposed advantage; or (3) a course of conduct. *See Baptist Physician Hosp. Org., Inc. v. Humana Military Healthcare Servs., Inc.*, 481 F.3d 337, 352 (6th Cir. 2007). "Where a party seeks to prove waiver by course of conduct, 'there must be clear, unequivocal and decisive acts of the party or an act which shows determination not to have the benefit intended in order to constitute a waiver.'" *Id.* (quoting *Gitter v. Tenn. Farmers Mut. Ins. Co.*, 450 S.W.2d 780, 784 (Tenn. Ct. App. 1969); *see also Song v. Chung*, No. E201800114COAR3CV, 2018 WL 5618114, at *9 (Tenn. Ct. App. Oct. 30, 2018). The proof must show absolute action or inaction inconsistent with the claim or right waived. *Freeman*, 2007 WL 1556604, at *10. "Specifically, the record must show conduct on the part of [the party against whom waiver is sought] which is . . . clearly inconsistent with an intention to insist upon a strict compliance with the [contractual] provision at issue." *Ky. Nat'l Ins. Co. v. Gardner*, 6 S.W.3d 493, 499 (Tenn. Ct. App. 1999) (alterations in original). "Generally, whether a waiver of a contractual provision has occurred in a given factual setting is a question of fact for trial." *GuestHouse Int'l, LLC v. Shoney's N. Am. Corp.*, 330 S.W.3d 166, 202 (Tenn. Ct. App. 2010) (citing *Gaston v. Tenn. Farmers Mut. Ins. Co.*, 120 S.W.3d 815, 819 (Tenn. 2003)).

The contract at issue here initially provided an "estimate" for shipment of the first machine in January 2015, and the second machine in May 2015.[2] (*See* Docs. 92-3 at 26 (twelve- and fourteen-month shipment estimates); 92-1 (purchase orders made in January 2014).) Those dates were extended by the parties because the machines could not consistently meet the requirements in A.O. Smith's specification. (Doc. 98 at 7.) On February 2, 2016, more definitive dates were supplied by a signed handwritten agreement which was intended to govern performance of the contract. (Doc. 6-5.) The first machine was to be shipped to A.O. Smith on March 14, 2016, and the second machine was to be shipped to A.O. Smith on June 1, 2016. (*See id.*) The handwritten agreement did not modify terms in the contract which required Taylor-Winfield to notify the A.O. Smith project manager of the date of a test run-off "at the supplier's site at least two (2) weeks prior to the scheduled test." (Doc. 92-4 at 5 ¶ 10.1.)

In support of its argument that the 2016 shipment dates were waived by Plaintiffs, Defendant states that (1) after the February 2, 2016 meeting, A.O. Smith demanded and got "upgrades" in the machines that "necessarily postponed" a factory run-off test, and (2) express conditions to delivery, such as a run-off test and acceptance to ship by A.O. Smith, never occurred. (Doc. 95 at 7-8.) The Court finds, however, that A.O. Smith's conduct was not so "clear, unequivocal and decisive" that the Court can determine that the 2016 deadlines were waived as a matter of law. *Baptist Physician*, 481 F.3d at 352.

---

[2] The Court refers to Plaintiffs' purchase orders (Doc. 91-1), the Taylor-Winfield formal proposal (Doc. 92-3), and Plaintiffs' long seam welder specification (Doc. 92-4) as "the contract." *See Springfield Tobacco Redryers Corp. v. City of Springfield*, 293 S.W.2d 189, 197 (1956) ("It is not necessary that the contract be contained in a single document. Any number of papers may be taken together to make out the written expression of the contract of the parties, provided there is sufficient connection between the papers.").

First, the facts regarding the requested upgrades after the February 2, 2016 meeting are not clear or undisputed, in and of themselves. Christopher Marrone, a project manager for Taylor-Winfield, attests that Dr. Anthony, a consultant from A.O. Smith, began suggesting significant changes in the underlying design and structure of the machines after the February 2, 2016 meeting. (Doc. 93 at 3.) After that, Marrone attests that some other, unidentified, A.O. Smith "official" stated that the suggestions were mandatory. (Doc. 93 at 3.) However, there is no evidence that the unidentified A.O. Smith official had authority to waive contract provisions. In addition, Taylor-Winfield did not agree to all of the suggested changes, which indicates that the company believed it still had discretion as to how to proceed under the contract. (*Id.*) If Dr. Anthony's suggested changes were not mandatory, Defendant had no reason to conclude it was excused from proceeding along agreed-upon timeframes. Plaintiff has also presented evidence that A.O. Smith's Plant Manager, Carol Peters, instructed Benyo to move forward with development and testing of the machines as Taylor-Winfield saw fit. (Doc. 98 at 9.) Peters informed A.O. Smith's internal team that they should support Taylor-Winfield's plans. (*Id.*)

More importantly, none of this evidence directly addresses the dates for shipment of the machines as agreed upon by the parties following the February 2, 2016 meeting. Plaintiffs could have requested design changes while fully expecting Defendant to still comply with agreed-upon shipment dates. In the face of Plaintiffs' silence about the dates, Defendant never informed Plaintiffs that it was prepared for run-off testing—as required by the contract in order for a run-off to be set—and never asked Plaintiffs for a new or "reasonable" time period in which to deliver the machines. (Doc. 98-3 at 7-8.) Defendant states that Peters "implicitly" acknowledged that A.O. Smith's suggestions would necessarily postpone run-off dates (Doc. 100 at 7), but the Court finds that an implicit acknowledgment is not "so clearly inconsistent with an intention to insist upon a

strict compliance" with the agreed upon time for performance such that it constitutes an implied waiver of that contract term. *Gardner*, 6 S.W.3d at 499.

Defendant next argues that a wavier of the deadline for shipment of the machines occurred because express conditions to delivery, such as a run-off test and acceptance to ship by A.O. Smith, never occurred. (Docs. 95 at 7-8; 100 at 9.) This argument, however, only ignores the fact that it was Taylor-Winfield's burden to "notify" the A.O. Smith project manager "of the date of the scheduled Trial Run at the supplier's site at least two (2) weeks prior to the scheduled test" once the machines were operational. (Doc. 92-4 at 5 ¶ 10.1.) A.O. Smith never issued a timely acceptance to ship because Taylor-Winfield never provided a sufficiently operational machine, notification of the date for a run-off, or a successful run-off. Thus, Plaintiffs' inaction can be attributed to the fault of Defendant, and not any intent to waive the benefit of the agreed-upon shipment deadlines. Defendant argues it had Plaintiffs' "full acquiescence" in not scheduling a timely run-off (Doc. 100 at 9), but for reasons above, the Court finds there to be a genuine dispute of material fact regarding any acquiescence by Plaintiffs.

The Court acknowledges that the parties' relationship in this matter, up until the filing of the instant lawsuit, was one marked by cooperation. Plaintiffs did engage in a pattern of repeatedly modifying their agreement without written amendment as Defendant struggled to deliver on the contract as formed, such as by allowing Taylor-Winfield to move from the TWINLAP long seam welding system to an entirely different system. (Doc. 98 at 12.) Indeed, Plaintiffs do not dispute that on April 6, 2016—after the date for delivery of the first machine had passed—A.O. Smith's technical project team met with Taylor-Winfield to try to determine a plan for preparing the first

machine to perform a run-off. (Docs. 98 at 11; 99 at 3.)[3] However, Defendant presents no evidence showing that the A.O. Smith project team condoned the delay which had already occurred during that meeting, nor did the parties agree to later shipment dates. While the acceptance of benefits under a contract with knowledge of a breach amounts to a waiver of the breach, *Madden Phillips Const., Inc. v. GGAT Dev. Corp.*, 315 S.W.3d 800, 815-16 (Tenn. Ct. App. 2009), Plaintiffs did not receive any benefits under the contract by continuing to attempt to help Taylor-Winfield produce a workable first machine. While there was some further cooperation between the parties, it appears that the meeting may have only amounted to an "unsuccessful attempt to convince the breaching party to honor its agreement" which does "not amount to waiver." *Madden*, 315 S.W.3d at 815-16. Mindful both that "whether a waiver of a contractual provision has occurred in a given factual setting is a question of fact for trial" and that Defendant bears the burden of proving a waiver, the Court cannot determine a waiver occurred on the basis of the April 6, 2016 meeting as a matter of law under the facts as developed. *GuestHouse*, 330 S.W.3d at 202.

The Court will **DENY** Defendant's motion for summary judgment (Doc. 91) on Plaintiffs' breach of contract claims (Doc. 6, counts 1-3).

C. **Breach of Warranty Claims**

Defendant next argues that summary judgment is appropriate as to Plaintiff's breach of warranty claims. (Doc. 95 at 11-13.) In their amended complaint, Plaintiffs have asserted two counts of breach of the implied warranty of fitness for a particular purpose (counts 4, 5), and two

---

[3] Plaintiffs' only dispute regarding this point is that an exhibit to Benyo's affidavit, A.O. Smith's analysis of the project on April 6, 2016, is not referenced in Benyo's affidavit, no foundation is provided for it, and it constitutes hearsay. (Doc. 98 at 10.) The Court only relies on Benyo's affidavit and not the substance of the exhibit in its analysis.

13

counts of breach of express warranty (counts 6, 7), in addition to breach of contract claims. (Doc. 6 at 8-10.)

>Tennessee law provides,
>
>An action for breach of any contract for sale must be commenced within four (4) years after the cause of action has accrued . . . A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

Tenn. Code Ann. § 47-2-725. Defendant reasons that this provision precludes Plaintiffs' breach of warranty claims because "tender of delivery" of the machines has not been made. (Doc. 95 at 11.) The statute notes that an action "must be commenced . . . *after* the cause of action has accrued[,]" that "a cause of action accrues when the breach occurs[,]" and that "a breach of warranty occurs when tender of delivery is made." Tenn. Code Ann. § 47-2-725 (emphasis added). Plaintiffs argue this statute does not preclude their claims because it only discusses the statute of limitations for bringing a breach of warranty claim. (Doc. 98 at 22.) Plaintiffs note that there is no discussion of tender of delivery within other UCC provisions governing express warranty and implied warranty of fitness for a particular purpose. (*Id.*) Plaintiffs do not, however, cite any case involving a breach of warranty claim where goods have not been delivered.

Defendant's argument is well-taken. "In an action based on breach of warranty, it is of course necessary to show not only the existence of the warranty but the fact that the warranty was broken and that the breach of the warranty was the proximate cause of the loss sustained." Tenn. Code Ann. § 47-2-314, cmt. 13. Breach of warranty claims concern the quality of goods, and as such, presuppose that there has been a delivery of goods which do not conform to the seller's express or implied promises. *See Leach v. Wiles*, 429 S.W.2d 823, 832 (Tenn. Ct. App. 1968)

14

("there can be no recovery . . . unless it is shown that the goods purchased did not measure up to the requirements of such implied warranty at the time such goods passed from the seller to the purchaser"); *Hollingsworth v. Queen Carpet, Inc.*, 827 S.W.2d 306, 309 (Tenn. Ct. App. 1991) (compliance with warranties assessed "at the time the goods passed from the seller to the purchaser"); *Dan Stern Homes, Inc. v. Designer Floors & Homes, Inc.*, No. M200800065COAR3CV, 2009 WL 1910955, at *4 (Tenn. Ct. App. June 30, 2009) ("In order to recover under this warranty, the purchaser must show that the goods did not measure up to the requirements of the warranty at the time they were delivered"). Moreover, a cause of action may not commence until it accrues. *Accrual of cause of action*, 1 Tenn. Cir. Ct. Prac. § 1:2; *Gibson v. Swanson Plating & Mach. of Kentucky, Inc.*, 819 S.W.2d 796, 797 (Tenn. 1991) ("a cause of action does not accrue until a suit can be maintained."); *Hodge v. Serv. Mach. Co.*, 438 F.2d 347, 349 (6th Cir. 1971) (same); *see also Knott v. Stewart Cty.*, 207 S.W.2d 337, 339 (Tenn. 1948) ("This court cannot settle abstract questions, however important, or however simple they may be, upon the supposition that they may hereafter arise."). By statute, Plaintiffs' breach of warranty actions have not accrued because no tender of delivery has been made. *See* Tenn. Code Ann. § 47-2-725.

Accordingly, the Court will **GRANT** Defendant's motion for summary judgment (Doc. 91) on Plaintiffs' breach of warranty claims (Doc. 6, counts 4-7).

### III. CONCLUSION

Having assessed all of the arguments presented in Defendant's motion for summary judgment, the Court will **GRANT** the motion **IN PART** and **DENY** the motion **IN PART** (Doc. 91). The Court will **DENY** the motion as to Plaintiffs' breach of contract claims. The Court will **GRANT** the motion as to Plaintiffs' breach of warranty claims.

15

**An Order Will Enter.**

>/s/
>**CURTIS L. COLLIER**
>**UNITED STATES DISTRICT JUDGE**